OPINION
{¶ 1} Shea Thomas was indicted for felonious assault with a firearm specification. After a trial by jury, Thomas was found guilty and sentenced consecutively to three years on the specification and seven years on the principal offense.
 {¶ 2} On appeal, Thomas advances two related assignments of error.
 {¶ 3} "1. The trial court erred when it allowed the state to present gun residue evidence which was not disclosed to defense counsel until the date of trial.
 {¶ 4} "2. Trial counsel rendered ineffective assistance when he failed to request a continuance in order to adjust his trial strategy to account for introduction of the gun residue test and to prepare a cross-examination of the expert witness."
* * * * * * *
 {¶ 5} Around 3:00 a.m. on May 26, 2004, Jeffery January was shot in front of 515 Mulberry Street in Springfield. January identified his assailant to the police responding to the shooting as Rah-Rah, a nickname for Shea Thomas. January testified that there was animosity between himself and Thomas because of a past altercation. January said he had known Thomas to carry a gun, but not Ricky Brigance.
 {¶ 6} After the shooting, Ricky Brigance was observed leaving the vicinity of the shooting. The police arrested Brigance and his hands were swabbed at police headquarters for gun residue testing. Thereafter, the swabbings were tested at the Miami Valley Regional Crime Laboratory, and a report of the testing was rendered by Forensic Chemist Gary Shaffer July 27, 2004, which was sent to Officer Gary Wilson at the Springfield Police Department. The report stated in pertinent part:
 {¶ 7} "The above evidence was analyzed by atomic absorption analysis for the element antimony which is a component of most primer mixtures and/or bullets. This element in sufficient quantities on an individual's hands can be consistent with gunshot residue and places the individual in question in an environment where gunshot residue was present.
 {¶ 8} "No sufficient quantities of antimony (a constituent of gunshot residue) were detected on the above evidence.
 {¶ 9} "The absence of gunshot residue leads to the following conclusions:
 {¶ 10} "1. The tested subject did not fire or handle a weapon, or
 {¶ 11} "2. The tested subject fired a weapon but the weapon did not emit residues, or
 {¶ 12} "3. The tested subject handled a weapon but the weapon contained no residues, or
 {¶ 13} "4. The tested subject fired a weapon, but washed or wiped off the residue prior to obtaining the swabbings."
 {¶ 14} Later in the day on May 26, Brigance's picture appeared on the television news as the suspect in the shooting. January, who was by now at Miami Valley Hospital in Dayton, called the Springfield police to say that Brigance was not the shooter. The police visited January that evening, armed with two photo spreads. One contained Thomas' picture and the other contained Brigance's photo. January immediately picked out Thomas's photo on the first spread as being that of the shooter. He also picked out the photo of Brigance — with whom he was also acquainted — as the person who was depicted on the news and who was not the shooter.
 {¶ 15} On June 11, Thomas moved for discovery. The Shaffer report was not disclosed. On August 30, Thomas filed a notice of alibi. An entry of August 31 reflects that the trial date — previously scheduled for August 30 — was continued to September 7. In his opening statement on the first day of trial, Thomas — by counsel — told the jury that the evidence would show that he had an alibi and that January's assailant was Ricky Brigance. Before the beginning of the second day of trial on September 8, Thomas moved for an order preventing the State from introducing the Shaffer report. Because the factual representations in the supporting memorandum are borne out by the record, and the arguments in support of the motion are comparable to those made on appeal, we reproduce the memorandum in its entirety:
 {¶ 16} "The attorney for the Defendant was well aware that hand swabbing had been done on the hands of Ricky Brigance. As the swabbing was revealed in a report provided to the attorney for the Defendant long ago pursuant to his discovery request, a copy of said report attached hereto marked Exhibit B. The attorney for the Defendant in his examination of the discovery provided by the State of Ohio with regard to this case was well aware that there was much evidence pointing to Ricky Brigance as the person who shot the victim including an eye witness neighbor seeing Ricky Brigance leaving the victim shortly after the shooting with what the witness thought was a gun in the front of his pants. Ricky Brigance was apprehended at the scene shortly thereafter and the Defendant was not found at the scene. It was therefore very important for the Defendant's attorney to know whether there was any testing with regard to the swabbing of Ricky Brigance's hands.
 {¶ 17} "Thus at the request of the Defendant there was a hearing in this court in the early morning on Friday, September 3rd wherein the attorney for the Defendant showed the prosecutor a City of Springfield Crime Laboratory report dated May 28th, 2004 and stated to the prosecutor that this was the only scientific evidence that the defense had been provided through discovery and asked if there was anymore scientific evidence. The prosecutor replied that there was none and agreed that if there was any other scientific evidence to be presented at trial on Tuesday, September 7th, it would be provided to the attorney for the Defendant by noon on Friday, September 3rd. None was provided, none was mentioned and thus the attorney for the Defendant prepared for this trial on Saturday, September 4th, Sunday, September 5th and Monday, September 6th fully confident that there was no other scientific evidence.
 {¶ 18} "On the morning of the trial shortly before it was to begin, the prosecutor first showed the July 27th, 2004 lab report from the Miami Valley Regional Crime Laboratory marked Exhibit A to the attorney for the Defendant. Even as he showed it to him that morning, because of the agreement reached Friday, September 3rd, he represented to the attorney for the Defendant that he would not be using it. Late in the trial without any advance notice to the attorney for the Defendant he advises the court of the evidence and asked that he be allowed to introduce it into evidence.
 {¶ 19} "This request must be denied for two reasons. The Defendant's request for discovery in this case was filed on June 11th, 2004. As late as September 3rd, 2004, four days before the jury trial was to begin, the Defendant's attorney still agreed to give the State of Ohio until noon on September 3rd to provide to him any additional discovery with regard to scientific evidence. The report on its face indicates that the Springfield Police Department had the report on or about July 27th, 2004 and there is no reason whatsoever why this report could not have been provided to the attorney for the Defendant by twelve noon on September 3rd as agreed between the defense attorney and the State of Ohio. To now allow the State of Ohio to introduce this damaging evidence after the defense attorney has prepared his whole case without being aware of it is grossly prejudicial and grossly unfair to the Defendant. If the State of Ohio is allowed to do this no defense attorney can every [sic] properly prepare his case because he will never know what to expect in the way of the State's evidence in a particular case.
 {¶ 20} "The second reason is that the defense attorney has no chance to study the issue of hand swabbing for the purpose of finding gun residue, has no chance to become familiar with the process, to be able to properly cross examine the witness and then once again if the State of Ohio is allowed to spring scientific evidence upon the defense attorney on the day of the trial, trying to prepare for the defense of a case becomes impossible."
 {¶ 21} The trial court had extensive discussions with counsel on the motion, including sworn testimony from defense counsel and the prosecution.
 {¶ 22} The prosecutor stated that he had only learned of the Shaffer report the morning of September 7 and immediately gave defense counsel a copy. He said he told defense counsel he wouldn't use it unless defense counsel "opened the door" which defense counsel did by attempting to put the blame on Brigance rather than emphasizing the alibi defense, which the prosecutor said his pretrial preparation had focused on.
 {¶ 23} Defense counsel didn't concede that he had opened the door, reiterated the arguments that he made in his written memorandum, and stated that he was not claiming that the prosecutor intentionally withheld the Shaffer report.
 {¶ 24} The trial court overruled the motion, defense counsel did not request a continuance, and Gary Shaffer testified to his report. During the evening between the first and second days of trial, defense counsel had utilized the Internet to educate himself about gunshot residue testing. At the end of his cross-examination of Gary Shaffer, he elicited the following concession:
 {¶ 25} "Q. Gunshot residue. So, again, I guess you would agree with the maxim that, again, I've taken off the Internet. For all of these reasons we've gone over, the absence of gunshot residue doesn't prove that someone didn't fire a weapon.
 {¶ 26} "A. Yes, sir.
 {¶ 27} "Q. Thank you."
 {¶ 28} Defense counsel's final argument, while alluding to the alibi evidence, concentrated on the evidence pointing to Brigance as the shooter. (Defense counsel did not object to the admission of the Shaffer report at the close of the State's case.)
* * * * * * *
 {¶ 29} There can be little doubt that the State's failure to timely supply Thomas with a copy of the Shaffer report was a violation of Crim.R. 16. The question for us is whether this failure is cause for reversal. Both sides cite to State v.Parsons (1983), 6 Ohio St.3d 442, syllabus, as authority for their respective positions:
 {¶ 30} "Where, in a criminal trial, the prosecution fails to comply with Crim.R. 16(B)(1)(a)(ii) by informing the accused of an oral statement made by a co-defendant to a law enforcement officer, and the record does not demonstrate (1) that the prosecution's failure to disclose was a willful violation of Crim. R. 16, (2) that foreknowledge of the statement would have benefitted the accused in the preparation of his defense, or (3) that the accused was prejudiced by admission of the statement, the trial court does not abuse its discretion under Crim.R. 16(E)(3) by permitting such evidence to be admitted."
 {¶ 31} Thomas contends that the State's violation of Crim.R. 16 was wilful but the record refutes the claim of wilfulness. The prosecutor claimed, and defense counsel did not dispute, that he first learned of the Shaffer report on the morning that trial was to begin, and the trial court so found in overruling Thomas' motion to prohibit use of the report. Furthermore, defense counsel affirmatively stated that he did not claim the failure to disclose was intentional.
 {¶ 32} As an abstract proposition, we would agree with Thomas that foreknowledge of the Shaffer report would have benefitted Thomas in the preparation of his defense because foreknowledge of the State's evidence is always useful. As a practical matter, however, we conclude that the actual benefit of foreknowledge of the report would have been minimal.
 {¶ 33} Thomas suggests that had he known of the report he could have refocused his defense away from emphasizing Brigance as the shooter. However, his only other defense was alibi and he presented his only alibi witness, his younger brother Dorian. Dorian Thomas testified that he and his brother were alone at their grandmother's house in Dayton at the time in question, but that his grandmother wouldn't recall that because she has Alzheimer's disease.
 {¶ 34} Thomas also claims that foreknowledge of the report would have enabled him to better account for Brigance having no residue on his person or use expert testimony to mitigate the effect of the report. In our judgment, it is entirely speculative to surmise that Thomas' foreknowledge of the Shaffer report would have enabled him to accomplish more than he did: extract a concession from Shaffer that the absence of residue on Brigance did not mean he was not the shooter.
 {¶ 35} Finally, we conclude that Thomas was not prejudiced by the admission of the report because it didn't undermine Thomas' attempt to make Brigance out to be the shooter. By the time Thomas had concluded his testimony, Shaffer had conceded that the lack of gun residue on Brigance did not rule him out as the shooter. Indeed, the report itself — quoted above — said as much. We think it is telling that defense counsel — an experienced trial advocate — found it unnecessary to object to the admission of the report at the end of the State's case, or abandon his "Brigance was the shooter" theory of defense in final argument.
 {¶ 36} We conclude that the trial court did not abuse its discretion in admitting the Shaffer report and the first assignment is overruled.
* * * * * * *
 {¶ 37} Turning to the second assignment, we find no ineffectiveness of counsel in failing to request a continuance. Indeed, neither prong of the two part test for ineffective assistance of counsel is met. See State v. Bradley (1989),42 Ohio St.3d 136; Strickland v. Washington (1984), 466 U.S. 668.
 {¶ 38} Despite his arguments that he had been taken by surprise, it would appear that after examining the Shaffer report and educating himself via the internet, defense counsel reasonably concluded he could neutralize the effect of the Shaffer report and Shaffer's testimony without a continuance in order to do so. The record bears out counsel's assessment. Indeed, the prosecutor never mentioned the Shaffer report in closing argument.
 {¶ 39} Turning to the prejudice prong, we find none. The admission of the Shaffer report did not undermine the attempt to make Brigance out to be the shooter. The alibi evidence was not impressive and could not have been made more so. January was consistent in his identification of Thomas as the shooter and supplied a motive for Thomas to shoot him. No one saw Brigance shoot January and Brigance had an explanation for having blood on his shirt: it was his blood from a nose bleed. In short, there is no reasonable likelihood that a continuance would have resulted in a different outcome.
 {¶ 40} The second assignment is overruled.
 {¶ 41} The judgment will be affirmed.
 . . . . . . . .
Brogan, P.J., and Donovan, J., concur.